UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANE McINTYRE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 06 C 4321 |
| | ) |
| BOARD OF EDUCATION, MAINE | ) Judge John W. Darrah |
| HIGH SCHOOL DISTRICT 207, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Diane McIntyre, filed suit against Defendant, Board of Education, Maine Township High School District 207 ("the School District"), alleging age discrimination. Presently before the Court are the parties' motions for summary judgment.

## FACTS

McIntyre, who was born in 1937, was employed by the School District as a special education teacher from August 1973 through June 2002. (Def.'s 56.1(a)(3) Statement ¶ 3). The terms and conditions of McIntyre's employment were governed by a series of collective bargaining agreements negotiated between the School District and the Maine Teachers Association, IEA-NEA ("the Union") (a labor organization representing the School District's teachers, including McIntyre). (Id., ¶ 4). The collective bargaining agreement between the School District and the Union in effect at the time of McIntyre's retirement was for the period of August 16, 1997 through August 15, 2002 ("the CBA"). (Id., ¶ 5).

McIntyre is, and has been at all relevant times, a participant in the Illinois Teacher's Retirement System ("TRS"), a state-wide retirement system created pursuant to the Illinois Pension Code, 40 ILCS 5.1 *et seq*. (Def.'s 56.1(a)(3) Statement ¶ 7). Generally, participants in TRS who retire before the retirement age of 60 will have their retirement annuity reduced by an amount determined by state law. Even so, eligible TRS participants may retire early, without any reduction to their retirement annuity, pursuant to the TRS Early Retirement Option ("the TRS-ERO"). To retire early and to be eligible for the TRS-ERO, a teacher must be between 55 and 59 years of age, with more than 20 but less than 34 years of creditable service, and make a one-time member contribution to TRS that must then be matched by the employing school district. (Id., ¶ 8).

The CBA provided various benefits for teachers upon retirement. Retiring teachers could participate in an early retirement incentive program or a service recognition program, depending upon the individual eligibility. (Def.'s 56.1(a)(3) Statement ¶ 9). The early retirement incentive provided for in the CBA was titled the Supplemental Voluntary Early Retirement Program ("SVER"). Under the terms of the CBA, retiring teachers could participate in SVER if they were retiring "early" as defined by the state-wide TRS-ERO – teachers ages 55 to 59 and with more than 20 but less than 34 years of credible service. (Id., ¶ 10). Under the terms of the CBA's SVER program, the School District agreed to pay the eligible retiring teacher a salary enhancement of $20,000. At the retiring teacher's option, the salary enhancement could be used, generally, to: (1) enhance the final year's base salary on which retirement annuity benefits were determined, up

to a maximum of 120 percent of the previous base year's TRS salary; (2) enhance each of the final two years' base salary, up to a maximum of $10,000 per year; or (3) combine an enhancement of the final year's base salary plus offsetting a portion of the retiree's health insurance premiums. (Id., ¶ 11; Plaint.'s 56.1(a)(3) Statement ¶ 11).

Pursuant to the CBA, teachers who were not retiring "early" under the TRS-ERO and were, therefore, ineligible to participate in SVER remained eligible to receive retirement benefits under the CBA's Service Recognition Program. (Def.'s 56.1(a)(3) Statement ¶ 12). The Service Recognition Program was a program available to teachers at least 55 years of age with at least 15 years of credible service in the School District. (Id., ¶ 13).

The CBA sections on early retirement state, in relevant part:

> While it is unclear whether state or federal age provisions impact upon the SVER, in its basic assumption of the [School District and the Union] that they do not. If the SVER is in violation of subsequently enacted state or federal legislation or it is determined by an appropriate administrative agency or a court of competent jurisdiction that, in order to be lawful, the benefits of this program must be extended to teachers other than those specified, rather than have such program so extended the parties agree that, at the Board [of Education]'s discretion:
> (1) this program shall either immediately cease; or
> (2) this program shall be modified if the parties mutually agree to conform to any legal requirements that may be applicable.

(Def.'s 56.1(a)(3) Statement ¶ 15). The CBA required teachers who wished to retire to apply for retirement no later than the first school day of December of the school term in which they wished to retire. McIntyre notified the School District on or before December 1, 2001, that she intended to retire at the end of the 2001-2002 school year. McIntyre requested early retirement incentives available to those retiring "early" under SVER. (Id., ¶ 17). At the time of the request, McIntyre was

3

aware that she was not eligible for benefits under the terms of the CBA and SVER because she was over 59 years old – she was 64 years of age at the time of her application for retirement and 65 at the time she retired. (Id., ¶ 17).

The School District denied McIntyre's request for SVER benefits because it was determined that she was not eligible to retire "early" under the TRS-ERO. For this same reason, the School District denied her request for reconsideration of that denial. (Def.'s 56.1(a)(3) Statement ¶ 18). McIntyre was eligible for benefits under the Service Recognition Program. (Id., ¶ 19). Accordingly, McIntyre received two additional salary increments to her normally assigned salary, applicable to her final year of work, amounting to $4,735.87. This amount was added to McIntyre's final-year creditable earnings and, therefore, increased her retirement annuity. McIntyre's final-year creditable earnings were less than they would have been had McIntyre received a salary enhancement under SVER. (Id., ¶ 20). McIntyre timely filed a charge of discrimination with the Equal Employment Opportunity Commission, charging that the School District's refusal to provide her a salary enhancement under SVER because of her age constituted age discrimination. (Def.'s 56.1(a)(3) Statement ¶ 21).[1]

McIntyre had been free to retire early when she was still eligible for early retirement benefits under the TRS-ERO, but she chose not do so because she believed that she could not afford to retire early. (Def.'s 56.1(a)(3) Statement ¶ 22). By choosing to refrain from early retirement and retiring

---

[1]Sharon Bossard, another special education teacher for the School Distric, began working for the School District the same month and year as McIntyre. Both Bossard and McIntyre retired from the School District in June 2002 with 29 years of service. Bossard was 55 years old at the time she retired. (Plaint.'s 56.1(a)(3) Statement ¶ 19). Bossard applied for and received benefits under SVER, including the salary enhancement of $20,000. Bossard's retirement annuity was and is greater than it would have been had she not been eligible for and received benefits under SVER. (Id., ¶ 20).

4

five years later, McIntyre's retirement annuity increased to approximately $72,045. (Id., ¶ 23). Under the terms of the 1995-1997 CBA, if McIntyre had wanted to apply for participation in the SVER program, she would have had to apply for the program during the 1995-1996 school year because she turned the age of 60 in May 1997. Had she retired at the end of the 1995-1996 school year, her annual TRS retirement annuity would have been $36,473.77, compared with her salary in 1995-1996 school year of $97,404.33. (Plaint.'s 56.1(b)(3) Statement ¶ 48). When McIntyre retired at the end of the 2001-2002 school year, her annual TRS retirement annuity was $72,045.94. (Id., ¶ 49).

During the effective term of the applicable CBA, a number of teachers retired from the School District, including some that retired "early" under the terms of the TRS-ERO. (Def.'s 56.1(a)(3) Statement ¶ 24). All teachers retiring during this time were treated consistently with the terms of the CBA with regard to its retirement provisions. Specifically, every teacher eligible for "early" retirement under the ERS-TRO that applied for the SVER salary enhancement benefit pursuant to the CBA received the benefit; any teacher that was not eligible for "early" retirement under the TRS-ERO did not receive the SVER salary enhancement benefit; and any teacher retiring at the age of 55 or more and with sufficient creditable service (but otherwise not eligible for the TRS-ERO) received retirement benefits under the Service Recognition Program. (Id., ¶ 25).

In June 2001, a teacher retiring from the School District who was over the age of 60 filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that the School District discriminated against him based upon age because he was determined ineligible for SVER retirement benefits. (Def.'s 56.1(a)(3) Statement ¶ 26). In late 2001, the Union sought to renegotiate the CBA, specifically, "want[ing] to negotiate questions raised by the

allegations in the age discrimination charge filed in June 2001." (Id., ¶ 27). The Union asserted that its position, by virtue of its request to renegotiate the CBA's retirement provisions, was that it should be "held harmless from any and all damages and attorney's fees awarded" if age discrimination charges were filed relating to the SVER program. (Id., ¶ 28). The School District acknowledged the Union's request to renegotiate all of the CBA's retirement provisions following the June 2001 EEOC charge. The Board considered, with input from counsel, the Union's request in two separate closed-session meetings in November 2001. The Board determined that: (1) there had been no finding by any court or other administrative agency that the SVER program was discriminatory; and (2) the CBA was expiring in August 2002, and negotiations for a successor agreement were beginning soon, at which time the SVER program would be addressed as one of many negotiated issues. (Id., ¶ 29). Accordingly, the negotiated terms of the CBA relating to retirement remained through the remainder of the CBA's term. (Id., ¶ 30).

At the November 5 meeting, it was pointed out that the CBA may be in violation of the Age Discrimination in Employment Act ("ADEA"). Superintendent C. Steven Snider asked for authority to renegotiate the retirement provisions, at no cost to the School District, "to avoid lawsuits over the potential for the contractual language to be in violation of the ADEA." (Plaint.'s 56.1(a)(3) Statement ¶ 28). On November 12, 2001, the Board held a second closed-door meeting. At this meeting, one of the Board's members asked about "the downside of making no change in the contract language at this time." Superintendent Snider responded that "one downside is that the district is knowingly causing its teachers to sue it to get a benefit that the federal government has deemed belongs to them." Superintendent Snider informed the Board that, since the November 5 meeting, the administration "has worked to create a plan that is both incentive and compliant."

Superintendent Snider described the plan and stated that "he was hoping for a legal program prior to December 1st." The Board decided to "honor the existing language" and instructed the administration to "indicate their intent to fix this problem in the next contract." (Id., ¶ 31). In December 2001, Superintendent Snider sent a letter to the president of the Union on behalf of the School District regarding the Union's attempt to renegotiate the SVER provisions of the CBA. Superintendent Snider wrote that the School District had met with the Union as "a preventative measure in an effort to attempt to avoid age discrimination complaints regarding the SVER program." (Id., ¶ 35).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001).

The ADEA prohibits an employer from discriminating against any individual in the "compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). This prohibition extends to employee benefits and benefit plans, including

early retirement plans. *See Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844, 849 (7th Cir. 1999) (*Solon*). Therefore, if an employer chooses to offer early retirement incentives, it must make those benefits available on nondiscriminatory terms. *See Solon*, 180 F.3d at 849. An early retirement incentive that is extended based solely on the age of the retiree is discriminatory on its face. *See Solon*, 180 F.3d at 853; *Karlen v. City Colleges of Chicago*, 837 F.2d 314, 319 (7th Cir. 1988) (*Karlen*); *Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.*, 421 F.3d 649, 653 (8th Cir. 2005) (*Jankovitz*).

The early retirement incentive in the present case, SVER, is extended (and lost) based on the age of the teacher (under age sixty). Thus, McIntyre has established a *prima facie* case of discrimination; and, for purposes of summary judgment, Defendant concedes that McIntyre has set forth a *prima facie* case of discrimination.

Defendant seeks summary judgment based on an affirmative defense provided for in the Older Workers Benefits Protection Act ("OWBPA"). The Defendant bears the burden of establishing its statutory affirmative defense. *See* 29 U.S.C. § 623(f)(2); *Jankovitz*, 421 F.3d at 654.

Pursuant to the OWBPA:

> It shall not be unlawful for an employer, employment agency, or labor organization –
> \* \* \*
> (2) to take any action otherwise prohibited under subsection (a), (b), (c), or (e) of this section –
> \* \* \*
> (B) to observe the terms of a bona fide employee benefit plan –
> \* \* \*
> (ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter.

29 U.S.C. § 623(f)(2)(B)(ii).

8

SVER is a voluntary early retirement incentive bona fide employee benefit plan. Thus, the issue is whether SVER is consistent with the relevant purpose of the ADEA. Whether the benefit plan furthers the purpose of the ADEA is made on a case-by-case basis, taking into account all of the relevant facts and circumstances. *See Auerbach v. Board of Educ. of the Harborfields Central Sch. Dist. of Greenlawn*, 136 F.3d 104, 112 (2nd Cir. 1998) (*Auerbach*). The relevant purpose of the ADEA is the prohibition of arbitrary age discrimination in employment. *See* 29 U.S.C. § 621(b); *Jankovitz*, 421 F.3d at 654. The denial or reduction of benefits based solely on an employee's age constitutes arbitrary age discrimination. *See Jankovitz*, 421 F.3d at 654 (retirement plan not consistent with purpose of ADEA where early retirement benefit ceases upon the employee's attainment of the age of 65); *Solon*, 180 F.3d at 319 (early retirement plan violated ADEA because the amount of available benefits decreased as age of employee decreased); *compare Auerbach*, 136 F.3d at 114 (early retirement plan was consistent with purpose of the ADEA that did not decrease benefits as the age of the participant increased).

Defendant relies upon *Auerbach* in support of its argument that SVER is consistent with the purpose of the ADEA because SVER offers a time-related window, as did the *Auerbach* early retirement plan, in which an employee is free to elect to participate in SVER and, during this window, the amount of the benefit is not decreased based on the employee's age. In *Auerbach*, the early retirement plan provided, in pertinent part:

> a participating teacher must actually retire at the conclusion of the year in which he or she first becomes eligible to retire . . . . Teachers older than 55 but who have not yet fulfilled the service requirements, must retire in the year they complete the service requirements, *regardless of their actual age*, to receive the retirement incentive benefits. Conversely, a teacher who has already completed the service requirements by the time he or she reaches age 55 must retire

9

> at the conclusion of the school year during which he or she becomes 55 in order to obtain these benefits. Otherwise, the benefits are lost forever.

*Auerbach*, 136 F.3d at 107-08 (emphasis added). Thus, the early retirement incentive in *Auerbach* included a time-related window, but that window did not have its upper limit fixed by age. In contrast, SVER has an upper fixed limit of eligibility of 59 years of age. Once the employee is over the age of 59, the early retirement benefit ceases to exist. This is inconsistent with the purpose of the ADEA. *See Jankovitz*, 421 F.3d at 655 (distinguishing *Auerbach* based on fact that the amount of early retirement incentive benefit dropped to zero upon an employee's attainment of the age of 65).

In sum, SVER violates the ADEA and does not fall within the safe harbor provision in 29 U.S.C. § 623(f)(2)(B)(ii) because it is not consistent with the relevant purposes of the ADEA as it discriminates aganist an employee because of that employee's age.

The parties have stipulated to McIntyre's damages if judgment is entered in her favor except as to the issue of whether she may recover liquidated damages. If an employer's violation of the ADEA is "willful," courts are required to assess liquidated damages in the same amount as the compensatory damages. *See* 29 U.S.C. § 626(b); *Mathis v. Phillips Chevrolet, Inc.*, 269 F.3d 771, 777 (7th Cir. 2001) (*Mathis*). A violation of the ADEA is "willful" if "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 614 (1993).

At the minimum, the undisputed facts demonstrate that the Board showed a reckless disregard as to whether SVER was prohibited by the ADEA. As early as June 2001, when a retiring teacher filed a charge of discrimination with the EEOC alleging that SVER violated the ADEA, the

Board was on notice that SVER may violate the ADEA. The debate of whether SVER violated the ADEA continued into early November 2001, when the Union attempted to address the issue and renegotiate the retirement provision due to concern that SVER violated the ADEA. The Board further addressed the issue in two Board meetings in November 2001. At these meetings, the Board was informed that SVER may violate the ADEA; and Superintendent Snider sought permission to renegotiate the retirement provisions to avoid ADEA lawsuits. At the November 12, 2001 meeting, Superintendent Snider informed the Board that the downside of not making any changes to the retirement provisions was that "the district is knowingly causing teachers to sue it to get a benefit that the federal government has deemed belongs to them." Following these meetings, the Board instructed the administration to fix the problem in the next contract. These undisputed facts demonstrate that the Board showed a reckless disregard as to whether SVER was prohibited by the ADEA. Accordingly, McIntyre may recover liquidated damages in the same amount as her compensatory damages.

The parties have stipulated McIntyre's damages if judgement is entered in McIntyre's favor. These damages include compensatory damages of $15,264.13 (representing the difference between the $20,000 SVER salary enhancement and the $4,735.87 service recognition increments she received instead) and payment by the School District to TRS in an amount of $1,221.13, or other amount determined by TRS, which will allow TRS to pay McIntyre corresponding back benefits and increase her future annuity payments as if calculated on her 2001-2002 salary augmented by the SVER salary enhancement. This second amount of compensatory damages is to be calculated by

TRS, and the parties agreed to accept TRS's calculation. These compensatory damages also form the basis of the liquidated damages McIntyre is awarded. Lastly, McIntyre may recover attorney's fees and costs in an amount to be determined.

Because the exact amount of damages is not yet known, McIntyre is directed to submit a claim for the total amount due, including a statement of the foregoing amounts and a petition for attorney's fees with the appropriate supporting documentation, within twenty-one days of this order. The School Board may file a response within fourteen days thereafter. The case is continued for status to January 30, 2008, at 9:00 a.m.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied; Plaintiff's Motion for Summary Judgment is granted. The case is continued for status to January 30, 2008, at 9:00 a.m.

Dated: 11-20-07

JOHN W. DARRAH
United States District Court Judge